DANIEL D. RAPPA, INC., a Delaware corporation, et al.,
Defendants Below, Appellants,

*vs.*

LINCOLN F. HANSON, H. WILLIS LAWRENCE
and MARTHA BACHMAN,
Plaintiffs Below, Appellees.

*Supreme Court on Appeal, April 9, 1965*

*Reargument Denied April 23, 1965.*

*Stephen Hamilton and Frank O'Donnell,* of Hamilton & O'Donnell, Wilmington, for appellants.

*William Prickett, Jr.,* of Prickett & Prickett, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice: This is an appeal from an order of the Vice Chancellor enjoining the carrying out of a resolution of the Levy Court of New Castle County to rezone certain lands in Mill Creek Hundred. In the action below the defendants were Daniel D. Rappa, Inc. (hereafter Rappa), the owner of the land; the members of the Levy Court of New Castle County, and the members of the Zoning Commission of New Castle County.

This controversy arose in February 1960, when Rappa filed a petition to the Levy Court asking for the rezoning of approximately 15 acres at the intersection of Loveville Road and Lancaster Pike. The petition met with active and widespread opposition on the part of some of the residents of that general area. The petition sought to change the zoning of the land in question from R-2 to C-1 to permit the erection of a large shopping center at the location.

The petition was referred to the Zoning Commission of New Castle County which, after holding a hearing, unanimously recommended that the petition be denied. Thereafter, a hearing was held before the Levy Court which, on July 19, 1960, voted 2 to 1 to grant the petition to rezone the lands from R-2 to C-1.

On August 2, 1960, the present action to enjoin the carrying out of the Levy Court's resolution was instituted. Numerous grounds were alleged but ultimately the plaintiffs urged primarily that the action of the majority of the Levy Court was arbitrary and illegal because a full hearing before it had not been held.

The record before the Vice Chancellor consisted of the records and documents of the Zoning Commission which, by reference, had been placed before the Levy Court for its consideration. These records were submitted to the Court of Chancery under a certificate of an attorney for the Levy Court to the effect that this was the record before the Levy Court and the Zoning Commission.

A hearing in the case was held December 18, 1961. At this hearing the attorney for the Levy Court appeared and stated in behalf of the Levy Court that he proposed to take no active part in the cause, but would rely upon the attorney for Rappa for the representation of the Levy Court's position. At this time the Vice Chancellor called to

his attention that the charge in the complaint was that the Levy Court's action was arbitrary, capricious and illegal. Nevertheless, the Levy Court's attorney reiterated that it would be represented by the attorney for Rappa.

Thereafter, testimony was taken and, on June 3, 1963, the Vice Chancellor handed down an opinion holding the action of the Levy Court to have been arbitrary because the record of the proceedings before the Levy Court was badly garbled; that certain documents before the Zoning Commission, viz., petitions of residents in opposition to the petition, were not before the Levy Court or the Court of Chancery, and that the Levy Court arbitrarily limited each side to 30 minutes without any prior notification to that effect and without any rules and regulations of such nature in effect governing hearings before the Levy Court.

Following the filing of the opinion, on June 7, 1963, the Levy Court moved for reargument. The Vice Chancellor considered this motion to be an application to enlarge the record which was the basis of his first opinion. The Levy Court offered in support of its motion affidavits of two of the Commissioners and a secretary of the Levy Court. From these affidavits it appeared that the hearing was conducted in accordance with previously adopted regulations governing such hearings, and that one of the restrictions in such regulations was a time limitation of 30 minutes for each side. It was further averred that these rules and regulations were read by the President of the Levy Court to those present when the hearing upon the Rappa petition commenced.

The Vice Chancellor denied the Levy Court's motion on the ground that the plaintiffs at the first hearing had discharged their burden to establish the arbitrary nature of the Levy Court's action, and that it was only after the court upheld the plaintiffs' position in this respect that the Levy Court belatedly sought to attempt to disprove this showing. In view, therefore, of the long delay on the part of the Levy Court and its practical withdrawal from the original hearing, he concluded to exercise his discretion and deny the right to reopen the case. This being so, he held that since the plaintiffs had

successfully shown the arbitrary nature of the Levy Court's action, the injunction should be made permanent.

In *McQuail v. Shell Oil Company*, 40 *Del.Ch.* 396, 183 *A.2d* 572, we held that zoning authorities acting within their prescribed legislative powers have a wide and liberal discretion in the exercise of those powers and that, consequently, a court is without power to inquire into the motives or purposes of the members of such a body. An attack, therefore, upon an act of zoning by such a body may be made only upon the ground that the action was arbitrary and unreasonable. The person seeking to make such an attack has the burden of showing it to be the fact. We went on to say, "Where it appears that honest judgment has been reasonably and fairly exercised after a full hearing, courts are cautious about disturbing the decisions of the legislative body."

Thus it required, we think, that the adoption of a Zoning Code or the adoption of a rezoning for a particular area requires the zoning authorities—in this case the Levy Court—to do so only after a full hearing with opportunity on the part of proponents and objectors to present their respective cases.

The Vice Chancellor held that the Levy Court in this case had not held a full hearing, but had in fact arbitrarily and without notice limited the objectors in the presentation of their point of view. Furthermore, he held that it was not at all clear from the record before them that the Levy Court had before it all of the data which was before the Zoning Commission, the recommendations of which a majority of the Levy Court refused to follow.

We think the record before the Vice Chancellor upon the basis of which his first opinion was issued supports these findings. Thus, at the first hearing the plaintiffs must be held to have discharged the burden cast upon them to demonstrate the arbitrary nature of the Levy Court's action. If this were the sole question before us we would of necessity have to affirm the judgment.

However, following the opinion of June 3, 1963 granting an injunction, the Levy Court on June 7, 1963 filed its motion to reopen the case for the taking of additional evidence. This was the first action

taken by the attorney for the Levy Court since his withdrawal and reliance upon Rappa's attorney on December 18, 1961.

The Vice Chancellor finally concluded not to permit the case to be reopened because ample opportunity had been given the Levy Court to prove that its action was in fact not arbitrary, and that this was one of the central issues raised by the complaint and answer. He was of the opinion that there must be an end to litigation and that parties must be required to bring forth all the evidence available to them at the time of trial. The additional facts sought to be added to the record were of course known and available to the Levy Court at the time of the first trial.

 The Levy Court's motion was regarded by the Vice Chancellor as an application under *Rule 59(a)*, *Del.C.Ann.* for leave to supplement the record after trial and decision. In this we think he was correct. Applications under *Rule 59(a)* are always addressed to the judicial discretion of the Court so that injustice may be prevented and, accordingly, by a proper exercise of its discretion, it may either grant or deny the motion.

 We are asked, therefore, to review a discretionary ruling of the Vice Chancellor. This court sitting in review of an order of a trial judge entered in the exercise of his judicial discretion has limited power. In such instances our inquiry is limited to a consideration of whether or not the entry of the order amounts to an abuse of judicial discretion. *General Foods Corp. v. Cryo-Maid, Inc.,* 41 *Del.Ch.* 474, 198 *A.2d* 681; *Consolidated Fisheries Co. v. Consolidated Solubles Co.,* 34 *Del.Ch.* 60, 99 *A.2d* 497. To justify a finding of an abuse of discretion it must appear that the action taken below was arbitrary or capricious. *Gladstone v. Bennett,* 38 *Del.Ch.* 391, 153 *A.2d* 577. We cannot say that a delay of 17 months in coming forth with evidence which may or may not have demonstrated that the Levy Court's decision was not arbitrary is not sufficient justification on the part of a trial judge to refuse to reopen the hearing in a case which already had been long delayed, particularly when that evidence was available to the movant at the time of the first trial.

For the foregoing reasons, we affirm the judgment below.